Good morning, Your Honors. Brian Mahoney appearing on behalf of the appellant, Laura Frederica Pluma. And, Your Honors, what you are here to decide is a very small and discreet issue, whether the bankruptcy court properly applied the formula approach in determining the interest rate that would be paid to the county tax collector. There's a question of mootness in this case that's been argued. Why is this case not moot? I don't believe it's moot for a number of reasons. One, the county has argued that the Chapter 13 case was dismissed. It has not been dismissed. And I had filed an opposition, and in my declaration there, I have attached the court's record. And in there, it does not show that the Chapter 13 case has been dismissed. It is still an open case, and it has never been dismissed. Okay. That's part of the issue. The other issue has to do with the new bankruptcy legislation that just went into effect this Monday. The county has argued that this new act applies to this Chapter 13 case, and it's my position based on the law that it does not apply. It only applies to cases that are filed on or after. Filing date controls, not if it's still pending. Correct. That would be my position. Well, one would infer that from the fact that everybody around the country lined up to file before the end. If you're wrong, they spent a lot of unnecessary time standing in line, apparently. Correct. And then the other issue has to do with how this played out. Just before the argument in front of the bankruptcy appellate panel, the debtor had refinanced to residents, and the county was paid their entire claim outside of the Chapter 13 plan through escrow. The county was not paid at the 4.3% interest that's in the plan. They put in their normal statutory rate, which is 1.5% interest per month, which becomes 18% for a year. So the question is, if indeed they're not entitled to 18% interest, we'd need to know what they are entitled to, and they should have to refund the balance of that back to the debtor. Is that recoverable through the bankruptcy process? Yes, it could. If they refuse to pay back what's called property of the estate, that could be sanctionable. You could bring a motion for violation of the ---- It's property of the estate? Yes, it is property of the estate. I thought that transaction was ---- the case wasn't dismissed, but wasn't there a discharge? There has been a discharge. So isn't this a post-discharge transaction? No, the discharge occurred after the refinance. All right. So if the discharge occurred after the refinancing closed, then I guess I would agree with you that the property is property of the estate. Correct. And that's how she was able to get the discharge was to refinance her property. All right. Now, getting to the merits, how would you describe what the proper system or the proper calculation is supposed to be based on? Well, I think it's based on and that's the way the court applied with the formula approach. There was another. What does that mean? What does formula approach mean? The formula approach means that you start with a base rate, either the prime interest rate or a rate on treasury obligations, and then you have to add a factor based on the risk of default and the nature of the security. And was that done? Yes. In my opinion, that was done. Where can you show me that that was done? That was done by the judge and even. If we look at my excerpts of record, which is the bankruptcy court's decision, they talk about at pages six through eight is the appellant's expert witness and his use of the formula approach. Right. And basically the court adopted the formula approach based. This is an excerpt of record page 10, and it goes from page 10 through really the end to page 14, where the court discusses why the formula approach is the better of the two and then does review the risk factors and risk of default. But the risk of default, as was used below, that is in the bankruptcy court itself, was simply by comparing, as I understand it, the amount of delinquency to the entire value of the property. Is that really what the cases call for? Because that ends up with essentially zero sum being added to the default rate, to the let's say prime rate or whatever the starting measure is. Is that really what's meant by risk of default? No, but I think in this instance it is, based on the unique circumstances, that what we have here is we've got the county has a tax lien of a little over $1,900. Is that? I understand. But what the VAT did was basically to say, look, we really should be focusing on something else, and that is the debtor, not just the comparison of numbers, because the comparison of numbers is never going to end up with anything as an add-on. Right? In this case, well, there was a little bit. 0.01% is what my expert and the bankruptcy court concluded. But it's really based on the unique circumstances of this case. The county has a first priority lien, and what they were looking here was the loan-to-value ratio was just very small, 0.01%. It costs money to enforce a lien, doesn't it? Not in this instance, no, because under California Revenue and Taxation Code, they cannot foreclose until five years after the obligation comes due. The debtor in her plan here was going to pay it off in 36 months. And suppose the debtor hadn't done it? If the debtor hadn't done it, the county would still have to wait until 2006 to foreclose on its lien. Which is what they call a risk of default, right? That is, having to wait for your money is worth money, isn't it? It is worth money, and that's why there is this prime interest rate or the rate on treasury obligations. I think what Judge Shader is getting at is the same issue that worries me. The BAP concluded that the bankruptcy judge really gave no weight at all to the risk of default. In fact, he virtually said that, right? That's correct. So the question is, really, does the bankruptcy – is that legal error? Does the bankruptcy judge have to give some weight to the risk of default? Isn't that the issue before us? I think it is. And he didn't do it, did he? He didn't do it, and I don't believe he needs to do it in this circumstance based on the unique facts of this case. Well, I noted that the BAP said that the finding of the 0.01 percent wasn't clearly erroneous, that there is some support for it. What they were doing is remanding BAP to take a look at the factors that they set forth about her income, you know, the risk of collection, basically. So what's the dispute here? I mean, what's the problem? The problem here is I don't believe that there is a risk of default because the default really doesn't occur until 2006, when that's the only time that the county could actually foreclose on its lien. Until that time, they are not allowed to do anything. Isn't there just an argument that the risk of default is small? Yes. You know, I don't understand. You're equating the risk of default with the time of enforcement. The risk of default talks about what the debtor's circumstance is, not what the circumstance is of the entity that's collecting. So simply saying, well, there's no risk of default because the only time they could move in to collect would be in five years. On the contrary, that tends to push in the other direction, doesn't it? I would argue no, it doesn't. Because basically, you know, this is a property that unless it becomes worthless, the county will be paid its entire claim. Without any cost. Without any cost. Generally, the risk of default is where it's a depreciating asset, where if the creditor doesn't get back a car or something else that's depreciating, they may lose value. Here, the county will never lose anything. They know they're going to get their lien paid off, whether it's six years because the debtor doesn't comply with the Chapter 13 plan or, in this case, in 36 months under the Chapter 13 plan. Okay. Why don't you save the rest of your time for Roboto. I will. Thank you, Your Honors. Good morning, Your Honors. Timothy Berry, Office of County Counsel for the County of San Diego, on behalf of the Tax Collector for the County of San Diego. With respect to the mootness issue, when the Court noticed us of the pending oral argument, one of the requirements is that we notify the Court of any issues that we believe may render the case moot. So I did file a brief. And I think the issues on mootness are twofold. Number one, the factual dispute that was pending between the Tax Collector and Ms. Pluma has been resolved when she refinanced the property. Well, the first dispute is, do you still contend that this bankruptcy case has been dismissed? No, Your Honor. And that was my error. It was my understanding that the case had been dismissed. So we're past that. So what dispute remains? I completely agree. It was my error in making that representation. The debtor has been discharged. The trustee has filed his final report. But I don't – my understanding is now that it has not actually been dismissed. Right. But the – But you still contend it's moot, right? I do contend it's moot. Right. Because the taxes were paid. And now the issue of whether or not it's appropriate – Well, I'm not sure that it is property of the estate. I think, number one, the issue of whether or not it was appropriate to pay – to require payment of the statutory rate of interest where payments are received from a third party outside the bankruptcy plan has not either been raised in this appeal or briefed by the parties. So that's not something that I'm actually here to argue. Well, the reason it wasn't raised, though, is that it hadn't happened when this case was briefed, had it? Had it already happened? Well, at the time we appeared before the BAP, she had paid – refinanced the home and paid the taxes. So it was after the case was on appeal. That was when the case was on appeal. And what may be appropriate, if it can't be resolved, is, of course, to go back to the bankruptcy court. Right. Where the court should resolve that issue. But I don't think that's something that's necessarily – certainly not something that's been appealed. Well, if you concede that, you know, it's subject to resolution by the bankruptcy court, then does that mean the case is not moved? That particular issue? Yes. Well, the issues that are before this court are moved. And the issue being – No, but what makes them moved? They would become moved only if we're not in a position to grant any relief. Isn't that what would make the case move? And that may very well have some merit, Your Honor. All right. My purpose in filing the brief was to make sure that I complied with the court's request to not apply it. Okay. What about the – are you still contending that the new Bankruptcy Act moves it? Yes. And secondly, on that issue, I'm not saying – it does move the legal issue. So the legal issue as to what the appropriate rate of interest is. How can it move the legal issue as involved in this case? Are you content that the new bankruptcy amendments are retroactive? No, I don't. Then how can it affect this case? Well, if you accept your premise that the factional issue is not moved, then the legal issue would remain relevant to this case. Right. The law is that it is applied at the time of when this case is filed, not as it is now. I agree. So what I'm saying is the legal issue as to what the appropriate rate of interest is remains valid if you accept the premise that the factual issue is not moved. I'm agreeing with the court. Okay. All right. We're fine. All right. So then now we get to the merit. Let me just clarify. I'm not arguing that it applies retroactively. My mootness argument was the factual issue has been resolved. The legal issue going forward is no longer relevant. Okay. Got it. I think. Go ahead. How about addressing the legal issue? Do you have photographs you'd like to show us? No, Your Honor, but we can go inspect my car if you'd like. I think the bankruptcy appellate panel in its decision very accurately and succinctly analyzed both the facts and the law and the testimony of the witnesses in this case You heard what the counsel for the debtors argued. What's your response to the argument that the county had this played out all the way to the six years before you could act on your lien, whether she defaulted or not, you'd still get paid and you wouldn't suffer any incremental costs so that the rate of interest determined by the bankruptcy court was quite appropriate? Your Honor, Judge Fischer alludes to that. I'm Judge Fischer. I know we all look alike. We wear the same red and black dresses. At least you didn't call me Justice Ginsburg. What the court is to focus on, and what this court's case law has said, is that you're to focus on the attributes of the debtor. The attributes of the creditor, in this case the tax collector, are irrelevant. In fact, it's the government that is, in effect, the creditor in this case is irrelevant. And the factors that the court says are important are what is the risk of default, what is the quality of the security, what is the likelihood that you're going to get paid. Now, what happened in this case? Doesn't your argument really boil down to the fact that whether or not there is a loss sustainable by reason of having to wait out the six years is a function of what price is paid for the money in the meantime? And what you're saying, I gather, is that the minimal add-on to the base figure is not an adequate price for the loss of use of the money. Is that how it plays out from your perspective? Yes, Your Honor. The purpose of either the formula approach or the similar loan approach is to arrive at a market rate of interest. The analysis that the debtor's expert did and the court adopted didn't describe, in fact, he said he didn't even attempt to arrive at a market rate of interest in his analysis. In terms of the debtor? In terms of the debtor. He completely focused on the quality of the security and completely ignored the attributes of the debtor in arriving at his rate of interest. And, in fact, he testified that this debtor could not go out and obtain a loan for that rate of interest. And, in fact, even a well-qualified creditor or debtor could not go out and obtain a loan in the marketplace at that rate of interest. It did look pretty low, 4%. I agree, Your Honor. My mortgage was in that figure. And so when you take the prime rate of 4.25, which it was at that point in time, he added a really de minimis risk factor of .01, and his risk factor was completely based on the quality of the security. I understand. Not the attributes of the debtor. And the court really, in the bankruptcy court, adopted that. And I don't believe that the testimony of Mr. Dell was competent and certainly didn't meet the qualifications requirements. Well, what if he had testified essentially, as counsel has argued to us here, along the lines that the fact that the debtor couldn't get the loan, I've looked at that, but I don't consider that this debtor's default will cost or deprive the county of anything. Therefore, .01% is the only factor. In other words, if he had couched his opinion in those terms, then would what the BAP has laid out be satisfying? I think that's very possible. If he had said, I considered the attributes of the debtor in arriving at my risk factor of .01, and this is what I did, then it's really a question of fact for the bankruptcy court to weigh the conflicting testimony between the experts and decide what was appropriate. Before the bankruptcy court, did you take a position on what an appropriate risk factor was in this case? Yes, Your Honor. What did you ask the bankruptcy court to adopt as a risk factor? Well, we didn't ask we did a similar loan analysis rather than a formula approach. So our expert went out to the marketplace and did a survey of what the rates were in the market, what similar loans. So he didn't break it down into the different factors. No. And he looked at the attributes of the debtor, the fact that she had filed a Chapter 13 before that had been dismissed, the fact that she had defaulted on the current loan that she was refinancing through this bankruptcy, the fact that she was depending on more than $1,000 a month in income from relatives in order to fund her plan, that her expenses exceeded her income. He looked at all those things, and in arriving at a market rate of interest, which is the goal of what we're doing here, he said that the interest rate that she could go out and obtain a loan at would not be less than 10%. So I believe the only competent evidence that was before the bankruptcy court was that the rate of interest could not be less than 10%. So not only are we asking you to uphold the bank's appellate panel's decision, but that find that the only competent evidence in the record was that the rate of interest not be less than 10%. Did you make that same argument before the BAP about the only competent evidence was for 10%? I didn't argue that it was the only competent evidence. I argued that what our evidence showed. All right. But the BAP decision is one, was it not, that said that something more had to be done. They didn't arrive at the ultimate number. I agree. And what I'm urging this Court to do is to look in the record and determine that there is no other competent evidence in the record and that the 10% rate of interest is the only competent evidence. Even in the face of the BAP's finding that they're, as they put it, we generally agree with the bankruptcy court's conclusion that the risk to the security is slight. However, there is some risk to the security. The court accepted the debtor's expert opinion that the risk was 0.01%. The court has some support for his findings, so the finding is not clearly erroneous. So then it all turns on whether or not taking into account the factors that you listed, which the BAP listed at ER 22 itself, you're saying that what we should then construe this as is a record where there's the only evidence of risk to the debtor, a risk of default by the debtor, is what you've enumerated with the BAP enumerated, and from that conclude that 10% is the appropriate rate. Yes, Your Honor. And we did brief that in our brief to this Court. Okay. Thank you. Thank you. Your Honors, I'd just like to make two more points. One, the bankruptcy court did look at the debtor's position here. Excerpts of record, page 12, it does say that at the time of the hearing, debtor was current on her payments, proposed to pay the county in full, and the county's expert testified that they'd have to wait six years before they could collect, and here the debtor proposed to pay the county within a shorter period of time, and the risk of default here would be lower since debtor will be paying the county in a relatively short period of time rather than waiting out until 2006. Another matter that I didn't address, and maybe it's something I want you to be aware of, that the U.S. Supreme Court did decide a case, Till v. SCS Credit Corp., that basically adopted the Ninth Circuit's market rate approach. Could you say that again, please? Yes. We just like to hear it when we're affirmed. Okay. A case of Till v. SCS Credit Corp. Got it. Yes. And on page 1961 of the Supreme Court Reporter, it does talk about that the evidentiary- Could you give us a volume two? Yes, I'm sorry. 124, Supreme Court, starts at 1951, and the page I'm quoting is at 1961. It basically holds that it's the creditor who has the evidentiary burden. It says that starting from a conceitedly low estimate and adjusting upward places the evidentiary burden squarely on the creditors, who are likely to have readier access to any information absent from the debtor's filing, such as evidence about the liquidity of the collateral market, et cetera. So basically what the bankruptcy appellate panel is trying to do is put the burden on the bankruptcy court when it's not the bankruptcy court's burden, it's the creditor's burden to show that the interest rate that's been accepted- Is the risk of default that's being talked about here, the risk of default in paying the current deficiency, or is it the risk of default during the time period before the creditor can move in, in the event of default, and that is during that entire time frame, which puts it in terms of what the debtor's circumstances are, such as the unavailability of added money that is necessary in order to keep current on the mortgage. Which is the risk of default that we're looking at? I don't think it's been defined in the case law, but I would submit that in this instance- It's only on the little deficiency? Is that the only risk of default we're talking about? And the fact that it was paid off then answers that one? Is that your position? That's my position, yes. Okay. All right. Thank you very much. Counsel, we appreciate the argument. Thank you, Your Honor. All right. The case just argued and submitted.
judges: Tashima, Fisher, Shadur